**OMNI INSURANCE COMPANY, Plaintiff/Intervening Defendant– Appellee,**

**The Ohio Casualty Insurance Company, Intervening Plaintiff–Appellant (98–5234),**

v.

**Tonya S. HARMON, George Fultz, Johnnie Lewis, Defendants,**

---

Leisa Turpin, Defendant–Appellant (98–5232)

Nos. 98–5232, 98–5234.

United States Court of Appeals, Sixth Circuit.

Argued March 19, 1999.

Decided Aug. 5, 1999.

John H. McCracken (argued and briefed), Bishop, McCracken & Potter, Bowling Green, KY, for Plaintiff–Appellee in Nos. 98–5232 and 98–5234.

Douglas L. Hoots (argued and briefed), Sheila P. Hiestand, Darla L. Keen (briefed), Landrum & Shouse, Lexington, KY, for Intervenor–Appellant in No. 98–5234.

Gary E. Conn (argued and briefed), Sandy Hook, KY, for Defendant–Appellant in No. 98–5232.

Before: KRUPANSKY, BOGGS, and CLAY, Circuit Judges.

BOGGS, Circuit Judge.

Appellants contest the district court's grant of summary judgment to Omni Insurance Company ("Omni"). Omni had issued a Florida man an automobile insurance policy under which the man rejected "bodily injury liability coverage." The man's ex-wife, who was listed as an insured driver under the policy, was subsequently involved in an accident in Kentucky in the insured car. Kentucky law requires, as a bare minimum, that all out-of-state insurance companies "transacting business" in Kentucky who issue a "contract of liability insurance for injury" covering the ownership, maintenance, or use of a vehicle in Kentucky must, under such contract, pay certain basic reparation benefits required by Kentucky law for injuries suffered in accidents occurring in Kentucky. The district court granted summary judgment for Omni on the ground that the insurance policy issued in this case was not a "contract of liability insurance for injury" because the purchaser rejected bodily injury liability coverage, as permitted by Florida law. We reverse, because the "contract of liability insurance for injury" in question in this case clearly did provide at least *some* bodily injury coverage for accidents that may occur in Kentucky, even though the driver rejected what is denominated "bodily injury liability coverage" under Florida law.

## I

Plaintiff-appellee (and intervening defendant) Omni is licensed to transact business in the state of Kentucky. On July 8, 1993, Omni issued an automobile insurance policy in Florida to Jack Harmon. This policy was renewed by Mr. Harmon on July 8, 1994, and was effective through July 8, 1996. Tonya Harmon, Harmon's ex-wife, was listed as a driver of one of the two cars covered by the policy, a 1986 Ford Taurus. Under both the original and the renewed policy, Jack Harmon rejected coverage for "bodily injury."

However, the policy does provide "personal injury protection" ("PIP") for Jack Harmon and any "relative," as well as "any other person while occupying the insured motor vehicle" and any pedestrian that is "struck by the insured motor vehicle." This PIP protection provides up to $10,000 for 80% of medical expenses, 80% of work loss, replacement services expenses, and death benefits "incurred as the result of bodily injury caused by an accident...." PIP coverage on an insured automobile covers only injuries that are either (1) suffered in an accident that occurs "in the State of Florida," or (2) suffered only by the policyholder, his spouse (if living in the same household), or a relative of the policyholder in an accident occurring anywhere in the United States or Canada. For the purposes of PIP, a relative is "a person related [to the policyholder or his spouse (if living in the same household)] by any degree of blood ... [or] marriage who usually makes his home in the same family unit, whether or not temporarily living elsewhere." The deductible for this PIP protection is $2,000. The Florida Motor Vehicle No–Fault Law requires that every auto insurance policy issued in the state of Florida must provide PIP to passengers in motor vehicles to a limit of $10,000. *See* Fla. Stat. Ann. § 627.736.

On November 8, 1994, Tonya Harmon was driving the 1986 Ford Taurus through Kentucky when she was involved in an accident. Ms. Harmon was divorced from Jack Harmon at the time the accident occurred. Several passengers in the Taurus, including defendant George Fultz (whose insurer, Ohio Casualty Insurance Company ("Ohio"), is an intervening plaintiff-appellant in the instant case) and defendant-appellant Leisa Turpin, suffered injuries and filed claims for Kentucky No–Fault benefits.[1] Omni refused to pay reparation benefits to the claimants. Ohio provided Fultz with coverage for wage loss and medical expenses resulting from injuries suffered in the accident.

Omni filed suit in federal district court on April 24, 1995, seeking a declaratory judgment that no coverage existed for appellants covering the injuries suffered in the accident. Ohio filed a motion for leave to file an intervening complaint against Omni asserting subrogation rights for monies paid to Fultz. The motion was granted, and Ohio's complaint was filed on June 23, 1995.

Omni, Ohio, Fultz, and Turpin all filed for summary judgment. On October 30, 1996, the court denied these motions pending its request to certify a question of law to the Kentucky Supreme Court. This request was denied by the Kentucky Supreme Court on March 28, 1997. On January 14, 1998, the court granted summary judgment for Omni, on the ground that the insurance policy issued to Jack Harmon was not a "contract of liability insurance for injury" because Mr. Harmon rejected bodily injury liability coverage validly under Florida law, and therefore Omni did not have to pay reparation benefits for the accident under Kentucky law. Ohio and Turpin filed timely notices of appeal.

## II

The district court granted summary judgment to Omni. Summary judgment is proper "if the pleadings, depositions, an-

---

1. The individuals injured in the accident are "defendants" for the purposes of this appeal

because Omni filed a suit seeking declaratory relief before Ohio's tort complaint was filed.

swers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Thus, we must consider "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Appellants' sole contention is that the district court erred in finding that Omni was not obligated to provide basic reparation benefits to those injured in the Kentucky accident. Under Kentucky law,

> [a]n insurer authorized to transact or transacting business in this Commonwealth shall file with the commissioner of insurance as a condition of its continued transaction of business within this Commonwealth a form approved by the commissioner of insurance declaring that in *any contract of liability insurance for injury, wherever issued, covering the ownership, maintenance or use of a motor vehicle other than motorcycles while the vehicle is in this Commonwealth shall be deemed to provide the basic reparation benefits coverage and minimum security for tort liabilities required by this subtitle*, except a contract which provides coverage only for liability in excess of required minimum tort liability coverage. Any non-admitted insurer may file such form.

Ky.Rev.Stat. § 304.39–100(2) (emphasis added). "Injury" is defined under subtitle 39 of the Insurance Code (§ 304) as "bodily harm, sickness, disease, or death." Ky.Rev.Stat. § 304.39–020(4). The district court felt that Omni, which had filed such a form, was not obligated to pay benefits because the named insured under its policy rejected bodily injury liability coverage, as permitted by Florida law, and thus Omni had not entered into a "contract of liability

insurance for injury" under Ky.Rev.Stat. § 304.39–100(2).

We believe that the district court's determination that Omni's contract with Jack Harmon was not a "contract of liability insurance for injury" is erroneous. In making this finding, the district court seems to have relied solely on the fact that Jack Harmon rejected coverage for "bodily injury." Omni contends that it is "undisputed" that Omni's policy was not a contract of liability insurance for injury.

The district court labored under the belief that Florida permits "property damage only automobile insurance" policies "within its own borders." This belief was incorrect, as the Florida Motor Vehicle No-Fault Law requires that every auto insurance policy issued in the state of Florida must provide "personal injury protection" ("PIP") to a limit of $10,000. *See* Fla. Stat. Ann. § 627.736. Thus, although a driver can reject some bodily injury coverage validly under Florida law, a driver cannot reject *all* such coverage. It seems that the purpose of PIP is to ensure that, within Florida state borders, insured drivers have a minimal amount of insurance ($10,000) against bodily injury. Even though Jack Harmon waived bodily injury coverage, he nonetheless had PIP coverage under his insurance contract. This coverage provided for him, any "relative," "any other person while occupying the insured motor vehicle," and any pedestrian his car may strike, 80% of medical expenses, 80% of work loss, replacement services expenses, and death benefits "incurred as the result of bodily injury caused by an accident. . . ." PIP only covers injuries that are either (1) suffered in an accident that occurs "in the State of Florida," or (2) suffered only by the policyholder, his spouse (if living in the same household), or a relative of the policyholder in an accident occurring anywhere in the United States or Canada.

Omni offers two reasons for why Jack Harmon's PIP coverage is irrelevant to the disposition of this case. First, it claims

that since PIP coverage is no-fault coverage mandated by Florida law, PIP coverage is not "liability insurance." This claim is misplaced, since PIP covers bodily injuries suffered by the policyholder and *any occupant* of an insured vehicle in any accident in the state of Florida involving the insured vehicle. It also covers injuries suffered by pedestrians struck by the insured vehicle in the state of Florida. Therefore, PIP coverage, at a minimum, insures the policyholder against any liability he may incur to (1) the occupants of a vehicle he drives and (2) any pedestrian he may strike. This clearly makes it a form of "liability insurance."

Second, Omni claims that its policy "does not provide PIP benefits" *in the state of Kentucky,* and, therefore, the PIP coverage is irrelevant to the disposition of this case. The district court agreed with Omni's contention that it was not required to provide benefits under the policy for this accident, which occurred outside the state of Florida. This belief on the district court's part was both irrelevant and incorrect.

Section 304.39–100(2) states that "any contract of liability insurance for injury, wherever issued, covering the ownership, maintenance or use of a motor vehicle ... *while the vehicle is in this Commonwealth* shall be deemed to provide the basic reparation benefits coverage and minimum security for tort liabilities required by this subtitle." (Emphasis added.) Interpreting the meaning and import of this complicated phrase poses a difficulty: does the phrase "while the vehicle is in this Commonwealth" refer to the insurance contract (*i.e.,* the contract *must cover the car in Kentucky*)? Or does it mean simply that the contract shall be deemed to provide

basic reparation benefits coverage while the car is in Kentucky, *regardless of whether the contract covers the car while it is in Kentucky?* Putting it another way, does the phrase "while the vehicle is in this Commonwealth" modify the language immediately *preceding* it or immediately *following* it?[2]

Resolving this dilemma is ultimately unnecessary for our purposes, for under either reading of the statute, Omni appears to be obligated to pay benefits to defendants to the extent required by subtitle 39 of the Kentucky Insurance Code. Under the assumption that the phrase "while the vehicle is in this Commonwealth" simply means that the contract is deemed to provide basic reparation benefits coverage anytime the covered car is in Kentucky, our analysis is simple. The fact that Omni's policy contained PIP coverage makes the policy a "contract of liability insurance for injury." It clearly provides benefits for "bodily harm, sickness, disease, or death," as outlined in Ky.Rev.Stat. § 304.39–020(4). Under this scenario, the statute simply requires that these benefits be provided *somewhere* (as opposed to requiring that the contract provide coverage for the car when it is in Kentucky), rendering the district court's observation that the PIP coverage did not (in its opinion) cover the car while it was in Kentucky irrelevant. Jack Harmon did not reject coverage for "bodily injury," as the district court contends. Rather, he rejected coverage for "bodily injury" *above and beyond that statutorily required under Florida law.* Omni's contract was, by virtue of its PIP coverage, a "contract of liability insurance *for injury*," since it covered bodily injuries suffered in accidents in Florida.

---

2. The Kentucky courts have not explicitly interpreted the meaning of this language in any case. The Kentucky Supreme Court has held that the phrase "while the vehicle is in this Commonwealth" means that coverage is provided when the vehicle *in which the injury occurs* (rather than the insured vehicle) is in the state. *See Dairyland Ins. Co. v. Assigned Claims Plan,* 666 S.W.2d 746, 748 (Ky.1984).

The policy at issue in *Dairyland,* however, appears to have explicitly provided coverage for accidents occurring in Kentucky. What was at issue in *Dairyland* was whether § 304.39–100(2) requires that the *covered vehicle* be within Kentucky at the time of accident. The Kentucky Supreme Court held that the statute does not have such a requirement. See *ibid.*

Even assuming *arguendo* that Section 304.39–100(2) requires that the contract in question provide coverage for (some) injuries suffered in Kentucky, our holding remains the same. Jack Harmon's PIP coverage not only provided benefits for injuries suffered in accidents occurring in the state of Florida, but it also covered injuries suffered by the policyholder, his spouse (if living in the same household), or a relative of the policyholder in the insured car in accidents occurring *anywhere in the United States or Canada*. In other words, if Jack Harmon or any of his relatives were in his car when it was involved in an accident occurring in Kentucky, *they would be entitled to PIP benefits for bodily injury*. Therefore, since the contract issued by Omni also clearly "cover[s] the ownership, maintenance or use of a motor vehicle ... while the vehicle is in" Kentucky, Omni is still obligated to pay benefits to defendants to the extent required by subtitle 39 of the Kentucky Insurance Code.

This does not necessarily mean that summary judgment must be granted to Ohio on Omni's complaint seeking declaratory relief. This case must be remanded to the district court so it can determine what "basic reparation benefits coverage and minimum security for tort liabilities" Omni was required to provide to defendants under subtitle 39 of the Kentucky Insurance Code.

To recap: at a minimum, Ky.Rev.Stat. § 304.39–100(2) forces an insurer, as a condition of doing business in Kentucky, to provide basic reparation benefits coverage and minimum security for tort liabilities under an insurance policy if the policy meets four conditions:

- (1) the policy is a contract of *liability insurance for injury*;
- (2) the policy is *issued anywhere*;
- (3) the policy *covers the ownership, maintenance or use of a motor vehicle*; and
- (4) the policy covers such ownership, maintenance or use *while the vehicle is in Kentucky*

A straightforward reading of Jack Harmon's insurance contract shows that it meets these four conditions. Thus, pursuant to § 304.39–100(2), the policy "shall be deemed to provide the basic reparation benefits coverage and minimum security for tort liabilities required by" subtitle 39 of the Kentucky Insurance Code.

The apparent anomaly cited by Omni—that the contract itself would not cover the accident that happened—is only apparent. The Kentucky statute has nothing to do with the coverage explicitly provided in automobile policies. It is simply a mandate to force insurers to provide (and insureds to pay for) certain benefits, regardless of the desires of either party.

### III

For the reasons set forth above, the district court's grant of summary judgment to Omni is REVERSED, and this case is REMANDED to the district court for further proceedings consistent with this opinion.